MAY TERM, 1881, No. 46.                    MAY 23D, 1881.

## Crowley et ux. *versus* Irvin.

1. A father sold to his daughter, who was one of his household, a mare, and the payment was made by his giving her an acknowledgment in writing that he had collected $3200 rent for her, which he promised to pay, and giving on the same day a receipt for the price of the mare. She gave no receipt on account of the obligation for $3200. He owned the real estate where they lived, the household goods, the stock, and several other horses. The mare was kept in the same stable and in the same pasture with them, fed from the same rack, ate oats from the same bin, and was cared for by the father's servant. In these respects the usage after the sale was the same as before. The mare continued to be used by father and daughter afterward as before. No witness was present at the sale, and no formal delivery of possession was proved to have taken place. *Held*, that in a suit in trespass by the daughter against the sheriff for levying on the progeny of the mare as the property of the father, the Court was right in directing the jury to find for the defendant.

2. Verbal declarations of the father and the daughter subsequent to the sale that the mare belonged to the daughter are of no account in such a contention as this, and cannot suffice to create title as against creditors.

3. Nor does the fact that the father, thirteen days before the levy, executed a lease of the farm to his daughter and her husband, the lease not being witnessed, acknowledged, or placed upon record, and there being no visible change of possession, change the title to personalty as to creditors.

ERROR to Court of Common Pleas of *Huntingdon County*.

Trespass by Daniel Crowley, and Eliza, his wife, in the right of the wife, against Samuel H. Irvin, sheriff of the said

[Crowley *et ux. v.* Irvin.]

county, for taking in execution and selling a mare and colt as the property of John McCombe, which were claimed to belong to the plaintiff. The plaintiff, Eliza Crowley, was the only child of John McCombe.

The material facts testified to on the trial were as follows:

February 26th, 1856, John McCombe purchased four acres of land, containing a sand quarry, and took a deed in trust for his daughter, Eliza, which conveyance was recorded June 6th, 1857. This property he leased at the rate of $400 a year. September 5th, 1873, on which day Eliza came of age, she and her father entered into a written agreement, drawn by her and unwitnessed, in which he acknowledged having received rents for the quarry to the amount of $3200, and promised to pay it to her. As part payment, he sold to her for $100 a mare, and gave to her a written receipt of the same date for the amount. The father owned the real estate where they lived, and she had been accustomed to use the mare before the alleged sale. She was a member of his family and so remained after the sale. He owned the household goods, the stock on the farm, and other horses. The mare was in the same stable with them, and in the same pasture; she was fed from the same rack and bin; she ate the hay, oats, and pasture of the father, and was taken care of by his servant. After the alleged sale the plaintiff claimed to own the mare repeatedly, and used her, and the claim was admitted by her father. He also used her for riding and driving. It was testified to that this was with the permission of the plaintiff, and that at times she refused to let the mare be so used. January 13th, 1875, plaintiff married, and she and her husband remained in the house of her father. The same day the mare died leaving a mare colt. This colt, having arrived at maturity, with its colt, were the subjects of the levy resulting in this suit. In the spring of 1877, all of the personalty of John McCombe was seized in execution by a third party and was sold by the sheriff, the plaintiff becoming the purchaser. The mare and colt were claimed by the plaintiff and were not sold. August 16th, 1877, John McCombe, by an unsealed and unwitnessed instrument of writing, leased his farm to the plaintiff and her husband for two years, at the rate of $100 per year, and they, on their part, agreed to give him boarding and washing at the rate of $100 per year.

In 1846, John McEnally obtained a judgment in Blair County against John McCombe, which, with interest and costs, amounted, in August, 1878, to $265.44. Under a *testatum fieri facias* issued upon this judgment, the defendant levied upon the mare and colt and sold them, December 16th,

1878, at public sale, for $86.04, and applied the proceeds in part payment of the judgment.

Upon this state of facts the Court below, DEAN, P. J., directed the jury to find for the defendant, charging them, *inter alia :*

" Where a sale of chattels is made without a change of possession, where a change corresponding with the sale can be made, the sale is void as to the creditors of the vendor. There must be an actual delivery of the article by the party selling to the party buying. There must be a relinquishment of the possession of the property by the one, and an assumption of the possession by the other. The possession cannot even be concurrent. A joint possession or control will not do; the possession of the buyer must be exclusive of that of the seller. It is against the policy of the law to permit the semblance of ownership in one, and the actual but secret ownership in another. As to creditors, the ownership of personal property is presumed to follow and continue with the possession, and lasts as long as the possession lasts, no matter if an actual sale for a good consideration has been made. And the reasons for this rule of the law are based upon the soundest principles.

" The possessor of personal chattels has a credit based on the possession, if the possession is open and notorious. In the absence of recording acts with reference to personal property, the possession is the only indication of ownership to the world. The public gives credit on the appearance of ownership. The trust thus reposed ought not to be disappointed by a real ownership under a secret title in another. It is contrary to the policy of the law to thus permit those dealing in personal chattels to mislead the public. The law says to the purchaser of a chattel capable of actual delivery : ' When you buy you must take what you buy ; if you do not, you shall not assert your title successfully, no matter what you have paid, nor how honest may have been the transaction as to him from whom you bought.' "

Assuming this alleged sale of the 5th September, 1873, by John McCombe to his daughter to have been honestly and actually made for a good consideration, was there then such a delivery, such change of possession in pursuance of the sale, as the law requires to constitute a valid sale as against the creditors of the father ?

And further : " But it is alleged that after the sale Eliza claimed the mare, and called her her own. As she lived in her father's house, and had all the privileges and benefits of a daughter, we fail to see any significance in that fact which would indicate ownership inconsistent with the possession

[Crowley *et ux.* v. Irvin.]

of the father. She doubtless called the bed she slept in hers, and the chair she occupied at the table hers; but such a claim from a member of the family would not lead any one to infer that the father had sold to her his household furniture. It is not unusual for the members of a family to call a favorite cow or horse or some article of property their own, and when the father, the head of the family and owner of the property, uses the same language, and says that such or such an article is his son's or his daughter's, it has no significance as indicating a change of possession following a sale. Taking the evidence in its strongest aspect, it amounts to nothing more than this: A sale took place, on the 5th September, 1873, of the mare. Thereafter, so far as appeared to others, the daughter said the mare was hers, and the father said she was his daughter's. This was not a sufficient delivery of the property as against creditors ; and such being the law, it is for us to so declare it, and so instruct you, and we direct a verdict for the defendant."

Plaintiffs excepted to this charge and opinion. The jury gave a verdict for the defendant, on which judgment was entered November 23d, 1879.

A writ of error was taken by the plaintiffs, and it was assigned for error.

*First.* The Court erred in charging the jury as follows, to wit.

" Taking the evidence in its strongest aspect, it amounts to nothing more than this: A sale took place, on the 5th September, 1873, of the mare. Thereafter, so far as appeared to others, the daughter said the mare was hers, and the father said she was his daughter's. This was not a sufficient delivery of the property as against creditors ; and such being the law, it is for us to so declare it, and so instruct you, and we direct a verdict for the defendant."

*Second.* The Court erred in not referring to the jury the question as to whether there had been such a delivery and change of possession under all the evidence, as the relations of the parties and the nature of the case would admit of.

*Third.* The Court erred in not submitting to the jury " whether the change of possession was actual and *bona fide*,— not pretended, deceptive, and collusive; and whether such change of possession was all that could be reasonably expected of the vendor, taking into view the character and situation of the property, and the relations of the parties."

*Fourth.* The Court erred in charging the jury in the words following, to wit: " But it is alleged that after the sale Eliza claimed the mare, and called her her own. As she lived in her father's house, and had all the privileges and

[Crowley *et ux. v.* Irvin.]

benefits of a daughter, we fail to see any significance in that fact which would indicate ownership inconsistent with the possession of her father."

*R. B. Petrikin* and *M. M. McNeil,* for plaintiffs in error, relied upon the case of McKibbin *v.* Martin, 14 P. F. Smith, 352, and cited McVicker *v.* May, 3 Barr, 227 ; Forsyth *v.* Matthews, 2 Harris, 100 ; Hugus *v.* Robinson, 12 Harris, 13 ; Dunlap *v.* Bournonville, 2 Casey, 74 ; Chase *v.* Ralston, 6 Casey, 539 ; Billingsley *v.* White, 9 P. F. Smith, 464 ; Mc-Marlan *v.* English, 24 P. F. Smith, 300 ; Parks *v.* Smith, 8 Weekly Notes Cases, 415 ; Evans *v.* Scott, 8 Norris, 136.

*Speer & McMurtrie* and *John Cessna* for defendant in error.

The rule in Evans *v.* Scott, 8 Norris, 136, will not save the plaintiffs : Worman *v.* Kramer, 23 P. F. Smith, 378 ; Garman *v.* Cooper, 22 P. F. Smith, 32 ; Miller *v.* Garman, 19 P. F. Smith, 134 ; McKibben *v.* Martin, 14 P. F. Smith, 352 ; Billingsley *v.* White, 9 P. F. Smith, 464.

The change of possession must be manifest, apparent, and open : Clow *v.* Woods, 5 S. & R., 286 ; Babb *v.* Clemson, 10 S. & R., 419 ; Milne *v.* Henry, 4 Wright, 352 ; Brawn *v.* Keller, 7 Wright, 106 ; Steelwagon *v.* Jeffries, 8 Wright, 412 ; Dewart *v.* Clement, 12 Wright, 414 ; Barr *v.* Reitz, 3 P. F. Smith, 258.

This rule has always been enforced with vigor in cases of sales of horses, cattle, and outdoor stock, and that invoked by plaintiff in error has only been admitted in case of sales of household or indoor property the removal of which would be injurious.

The doctrine that where there is a scintilla of evidence it must be submitted to the jury is exploded : Howard Express Company *v.* Wile, 14 P. F. Smith, 201; Elliott *v.* The Lycoming County Insurance Company, 16 P. F. Smith, 22 ; Cunningham *v.* Smith's Adm'r., 20 P. F. Smith, 450 ; De-Haven's Appeal, 25 P. F. Smith, 237.

The opinion of the Court was delivered by GREEN, J.

Upon a careful consideration of the testimony in this case we are persuaded that the action of the Court below, in taking the facts from the jury and directing a verdict for the defendant, was right. The action was trespass against a sheriff for seizing in execution a mare and colt as the property of a father, but which was claimed as the property of his daughter. It was alleged by the daughter that her father had sold and delivered to her another animal, the

mother of the mare in suit, in 1873. The payment of the price, $100, was by the father giving to the daughter an acknowledgment in writing that he had collected $3200 rent for her, which he promised to pay, and on the same day giving her a receipt for $100 for a dun mare sold to her. No money was in fact paid by the daughter, nor does it appear that any receipt was given by her to her father for the payment of $100 on account of the obligation for $3200, nor that such a payment was credited thereon. At the time of the sale the father owned the real estate where they lived, and his daughter was a member of his family and lived with him. He owned and occupied the premises, and he owned and used the household goods, the stock on the farm, and several other horses. The mare in question was kept in the same stable and in the same pasture with them, fed from the same rack, ate oats from the same bin, and was cared for by the father's servant, who also attended to his stock. In all these respects the usage after the sale was precisely the same as before. In point of fact no visible and no actual change took place in the possession of the mare, and she continued to be used by both father and daughter the same after as before. No witness was present at the sale, nor was any formal delivery of possession by the father to the daughter proved to have taken place. So far as the outside world were concerned, there was absolutely nothing to indicate any change of possession whatever. The verbal declarations of the father and the daughter subsequently to the sale that the mare belonged to the daughter are of no account in such a contention as this. They can never suffice to create title as against creditors. There could have been an actual, open, notorious delivery of possession in the presence of witnesses, but nothing of that kind ever transpired. But it is said the mare and colt in question were the natural increase of the one originally sold. That is true; but the title to the mother is the title to the offspring. If the parent mare was the property of John McCombe, as between him and his creditors, at the time the present animal was foaled, the foal was equally his, and so also was the progeny of the foal. It is also said that John McCombe, on August 16th, 1877, made a lease of his farm to his son-in-law and daughter, and that thereafter the entire property, real and personal, was in the possession of the lessees. The *fi. fa.* under which the mare and colt in question were sold, was levied on August 29th, 1877, thirteen days after the date of the lease. So far as any testimony printed in the paper-book is concerned, we can find none which indicates that the visible possession was in the least degree changed after the execution of this lease.

The father, daughter, and son-in-law lived together thereafter precisely as they had before. The lease was not placed on record. It was not witnessed, nor was it acknowledged. It does not appear that any human being knew of its existence except the parties to it. Surely, it could not be permitted that the mere execution of such a paper should of its own force suffice to change the title to personal estate as against the creditors of the lessor, where there was no change in the actual visible possession.

The facts of this case are such that no extended examination of authorities is necessary. The case of Evans v. Scott, 8 Nor., 136, chiefly relied on by the plaintiffs, is much short of the requirements of their case. There the actual possession of the premises in which the carpets were laid was as much the possession of the vendee as of the vendor, and the decision was put upon that ground. On p. 138, PAXSON, J., says: "The house in which the carpets were put down was in the joint occupancy of the two brothers. It was the home of each, and each contributed to the payment of the rent." Of course, in such circumstances there never was a time when the exclusive possession was either really or apparently in the vendor. But here the actual possession was originally in the vendor, and there never was a change in the apparent possession, and hence, as to his creditors, there was no change of title. This disposes of the first four assignments, and we see no error in those which remain.

Judgment affirmed.